# CASES

IN THE

# SUPREME COURT OF ILLINOIS.

## CENTRAL GRAND DIVISION.

### JANUARY TERM, 1876.

WILLIAM UPDIKE

*v.*

ANDREW J. WRIGHT.

81   49
133  468
81   49
159  192
81   49
171  197
81   49
178  383
81   49
j188  7360

1. DRAINAGE—*levee must be auxiliary to system of drainage.* The construction of a levee along a river, as an independent work, is not authorized either by the constitution or statute enacted thereunder. The object of the drainage law is, the drainage of land for agricultural or sanitary purposes, by means of drains and ditches. It is only in connection with a system of drainage that a levee or other work may be undertaken, as auxiliary to the drainage of lands.

2. The construction of a levee several miles along a river, can not be said to be a drainage of lands by drains and ditches over the lands of others; nor is such a levee, in any just sense, necessary to the drainage of lands, and is not within the meaning of the statute.

3. SPECIAL ASSESSMENTS—*for drainage, not constitutional.* The General Assembly, under the constitution, possesses no power to invest commissioners or juries, selected by the county court, with authority to assess and collect taxes or special assessments for the construction of a levee to prevent the overflow of lands.

4. TAXATION—*local, must not be against will of those affected.* The power of the legislature in respect to local taxation is subject to the limitation,

4—81ST ILL.

that the local burden of taxation, or special assessments, can not be imposed upon a locality without the consent of the tax-payers to be affected.

5. SAME—*constitutional limitation as to local.* Under the present constitution, the legislature may invest cities, towns and villages with power to make local improvements by special assessments or special taxation upon contiguous property to be benefited, but is prohibited from conferring this power upon any other municipal corporations, or upon private corporations.

6. SAME—*limitation as to taxes by municipal corporations.* Municipal corporations, other than cities, towns and villages, may be vested with power to assess and collect taxes for corporate purposes, but such taxes, under the constitution, must be uniform in respect to persons and property within the jurisdiction imposing the same.

7. SAME—*right of election as to taxes.* The clause of the constitution authorizing the passing of "laws permitting the owners or occupants of lands to construct drains or ditches, for agricultural or sanitary purposes," implies that the community whose property is to be taxed, may have the right of election in the matter, and a law authorizing a drainage and the imposition of taxes, or special assessments, without any previous vote of the persons affected thereby, is unconstitutional.

WRIT OF ERROR to the Circuit Court of Crawford county; the Hon. JAMES C. ALLEN, Judge, presiding.

Mr. E. CALLAHAN, for the plaintiff in error.

Messrs. VOORHEES & CARLTON, for the defendant in error.

Mr. CHIEF JUSTICE SCOTT delivered the opinion of the Court:

It is stipulated, the demurrer to the bill in this case shall raise the following questions and none others:

*First*—The constitutionality of the act of the General Assembly of the State of Illinois, entitled "An act to provide for the construction and protection of drains, ditches, levees and other works," approved April 24, 1871.

*Second*—The powers of the commissioners to construct a levee as a principal work.

*Third*—The power of the commissioners to issue bonds directly to the laborers in payment of labor.

Our inquiry will first be directed to the second proposition, viz: Have the commissioners any rightful authority, under the statute, to construct a levee as a principal work, independently of

a system of drainage? That section of the statute under which the construction of the levee in this case was undertaken, provides that whenever one or more owners or occupants of land shall desire to construct a drain or drains across the lands of others, for agricultural and sanitary purposes, they may present a petition to the county court, setting forth the necessity of the work, with a description of it, or their starting point, route and terminus, and then it is added, " and if it shall be deemed necessary for the drainage of the lands of such petitioners, that a levee or other work be constructed, the petitioners shall so state, and set forth a general description of the same as proposed." R. S. 1874, chap. 42, sec. 1.

This statute was evidently passed in view of that clause of the constitution which declares: " The General Assembly may pass laws permitting the owners or occupants of lands to construct drains and ditches for agricultural and sanitary purposes across the lands of others." Art. 4, sec. 31, const. 1870.

Apparently, an effort was made to have the law enacted conform to the constitutional provisions in every particular. Hence, it is declared the work to be done is the construction of drains and ditches for agricultural and sanitary purposes, and if it becomes necessary, in the construction of a system of drainage, that a " levee or other work " be adopted to make that system available, such levee or other work may be constructed under the provisions of the statute. But it is nowhere intimated the owners or occupants of lands may undertake, under the provisions of this law, the building and maintenance of an immense levee on the borders of a river, not connected with any system of drainage by ditches. Neither the constitution nor the statute contemplates any such work. What was in the minds of the framers of the constitution, and the legislators who enacted the law in pursuance of its provision, must have been, the drainage of lands by means of drains and ditches, and what is said in the statute on the subject of a " levee or other work," is always in connection with a system of drainage in that mode. The work outlined by the constitution and the statute is comparatively insignificant, and may be

done at no great cost; but that which is undertaken in this case is the construction of a levee on the banks of the Wabash river, of many miles in length, and estimated to cost a great many thousand dollars. No system of drainage by drains and ditches was planned, nor deemed necessary for agricultural and sanitary purposes. The representation to the county court is, the lands of petitioners are subject to overflow from the Wabash river; that their fences and crops are liable to be swept away and destroyed by such overflow; and that the same can be prevented by an earthwork levee. The undertaking is one of great magnitude, and will require the expenditure of large sums of money. The assessment on complainant's land is over $10,000. And the allegation in the bill is, that unless all further assessments proposed to be made be arrested, the levee will cost more than the land is worth. Any construction of the statute that would warrant the owners or occupants of lands to enter upon such an immense and costly work, seems forced and unreasonable. It is only in connection with drainage for agricultural and sanitary purposes that " levees or other works " may be undertaken, as auxiliary to the drainage of the lands. Our opinion is, this is the only construction the statute will bear, consistently with the constitution; otherwise one owner, whose lands are subject to overflow at certain seasons of the year, from a river, could set in motion the proceedings for the erection of a levee sufficient to protect his lands, no matter how expensive, and have the cost levied upon lands of others in the vicinity which commissioners appointed by the court might deem benefited by the improvement. Such a work can not be said to be draining lands by drains and ditches over the lands of others; nor is such a levee in any just sense, in the language of the statute, " necessary to the drainage of the lands." The work of constructing a great levee along the banks of a river subject to overflow, which defendants are about to do, is not embraced within the provisions of the statute, and is, therefore, without authority of enabling law.

But the decision may be placed on the other ground indica-

ted, that the General Assembly possesses no power under the constitution to vest the commissioners or juries selected, or the county court, with authority to assess and collect taxes, or special assessments, for the contemplated improvement.

Section 5, article 9, of the constitution of 1848, which declared " the corporate authorities of counties, townships, school districts, cities, towns and villages may be vested with power to assess and collect taxes for corporate purposes, such taxes to be uniform in respect to persons and property within the jurisdiction of the body imposing the same," was always construed, by the decisions of this court, as a limitation upon the power of the General Assembly to grant the right to assess and collect taxes to any other than the corporate or local authorities of the municipalities or districts to be taxed. *Board of Directors* v. *Houston,* 71 Ill. 318; *Harward* v. *The St. Clair and Monroe Levee and Drainage Co.,* 51 Ill. 130; *South Park Commissioners* v. *Salomon,* 51 Ill. 37; *Gage* v. *Graham,* 57 Ill. 144; *Hessler* v. *Drainage Commissioners,* 53 Ill. 105. It was also held, that power in the legislature was subject to the further limitation that a local burden of taxation or special assessments could not be imposed upon a locality, without the consent of the tax-payers to be affected.

That section of the constitution of 1870, upon this subject, provides " the General Assembly may vest the corporate authorities of cities, towns and villages with power to make local improvements by special assessments, or by special taxation of contiguous property, or otherwise. For all other corporate purposes, all municipal corporations may be vested with authority to assess and collect taxes, but such taxes shall be uniform in respect to persons and property within the jurisdiction of the body imposing the same."

The clause in the present constitution, like that in the constitution of 1848, must be construed as a limitation on the power of the legislature. Giving it that construction, the General Assembly can only vest cities, towns and villages with power to make local improvements by special assessments, or special taxation upon contiguous property benefited by such

improvement. By necessary implication, it is inhibited from conferring that power upon other municipal corporations or upon private corporations. Only cities, towns and villages are within the constitutional provisions, and, although other municipal corporations may be vested with power to assess and collect taxes for corporate purposes, the limitation is absolute, such taxes shall be uniform in respect to persons and property within the jurisdiction imposing the same.

With equal propriety, this clause of the present constitution, like the same provision in the former constitution, must be regarded as restricting the General Assembly in conferring the power to levy and collect taxes, either general or special, to the mode and manner therein indicated. We do not understand the legislature possesses plenary power, unlimited and unrestricted, to invest whomsoever it may choose with authority to assess and collect either special assessments or taxes for every conceivable purpose. As we have seen, only cities, towns and villages may levy special assessments or special taxation for local improvements, and all other municipalities can only be vested with jurisdiction to assess and collect taxes for corporate purposes, and that, too, under the positive inhibition such taxes shall be uniform in respect to persons and property. It would seem, therefore, to follow, as a corollary from the propositions stated, that neither the commissioners or the juries selected, nor the county court, is such a body as, under the constitution, may be given power to make local improvements by special assessments or by special taxation upon contiguous property.

There is still another consideration that has an important bearing on the decision of the case. The clause of the constitution we have been considering, like that in the constitution of 1848, must be understood, in the light of the decisions of this court, as forbidding the General Assembly from imposing a burden, by taxation, upon any locality, without the consent of the citizens affected.

Under this law, the people whose property is subject to taxation or assessments have never given any consent to it, if we

exclude those who may have signed the petition addressed to the county court. No opportunity was afforded them to do so, nor does the law make any provision for submitting the question to a vote, to ascertain the will of those whose property is to be subjected to this local burden. It is imposed upon them under the statute, by the decision of the county court. Obviously, that section of the constitution that declares " the General Assembly may pass laws permitting the owners or occupants of lands to construct drains or ditches, for agricultural and sanitary purposes," implies that the community whose property is to be taxed may have the right of election in the matter. Otherwise an onerous burden may be imposed upon them, without their consent; and such proceedings might be had as would result in the deprivation of property. How can the land owners be permitted to construct drains and ditches, unless some election is guaranteed to them? The language employed implies voluntary action. Illustration will make the inconsistency of the present law apparent. For example, the privilege is given to any occupant, as well as the owner of land, of presenting a petition to the county court. Should the construction contended for prevail, a tenant residing upon land adjacent to a river, subject to overflow, might present a petition, and, under the decision of the court, the work of erecting a levee, miles in length, and costing large sums of money, might be entered upon, and the expenses assessed upon the property in proximity to the river that might, in any degree, be deemed benefited. An intention to confer such unwarranted power upon one man, who would himself be subject to none of the burdens imposed, ought not to be imputed to the legislature. Any laws not permitting an election as to the propriety of undertaking the work, are vicious and within the inhibition of the constitution.

It does not militate against this construction, that the land owner may appear before the county court when the petition is presented, and resist the application, or may contest the assessment upon his property when made. Whether the contemplated work shall be undertaken, and his property sub-

jected to taxation, is not made to depend upon his election, but upon the decision of the court. It would be a solecism to call that privilege an election.

In the case at bar, this immense work, which, if completed on the plan proposed, will subject all the property in the vicinity that, in the judgment of the commissioners or juries selected, may be benefited, to a heavy and burdensome taxation, was commenced under the decision of the court as to its propriety, and not upon any election of the people upon whom the burden will fall. If this act could be held to authorize the imposition of such burdens in the mode the assessments were made in this case, it would be in contravention with the constitution as well as with the plainest principles of right and justice. The former decisions of this court, cited *supra*, sustain this construction.

Entertaining these views, which are conclusive of the whole case, it will not be necessary to discuss the other branch of the case suggested. The decree will be affirmed.

*Decree affirmed.*