## THE PEOPLE OF THE STATE OF ILLINOIS

*v.*

## WILLIAM McADAMS.

1. SCHOOL DISTRICTS—*meaning of, in constitution of* 1848. The school districts referred to in the 5th section of the 9th article of the constitution of 1848 as capable of being vested with power to assess and collect taxes for corporate purposes, are the public school districts well known and existing throughout the State, formed for the purpose of the maintenance and support of public schools under the general school laws of the State, as a part of the system for the establishment and maintenance of common schools throughout the State.

2. SAME—*can not be arbitrarily established and vested with taxing power.* The legislature, under the constitution of 1848, had no power to constitute a private school house, erected under the provisions of a will of a testator as a school house and place of worship, a district, and provide for the election of trustees therein, and invest them with the taxing power for the support of a school to be maintained therein.

APPEAL from the Circuit Court of Jersey county; the Hon. CYRUS EPLER, Judge, presiding.

Messrs. HAMILTON, HODGES & BURR, for the appellant.

Messrs. WARREN & POGUE, for the appellee.

Mr. CHIEF JUSTICE SHELDON delivered the opinion of the Court:

This was an application by the sheriff and *ex officio* collector of taxes of Jersey county, in this State, made to the county court of Jersey county, at the May term, 1874, for judgment and order of sale of real estate for non-payment of taxes. The defendant, McAdams, filed his objections to the rendition of a judgment against his lands situate in Hamilton primary school district, for the tax levied for school purposes for the year 1873. The county court overruled the objections, and gave judgment against defendant's lands for said taxes, and costs. On appeal to the circuit court, that court reversed the judgment, and rendered judgment for the defendant, and plaintiff appealed to this court.

It was admitted by the parties, on the trial in the circuit court, that, at a regular meeting of the board of trustees of Hamilton primary school, held on the 14th day of August, 1873, said board voted a tax of $6000 for school purposes, to be levied on the taxable property in Hamilton primary school district, for the year 1873, and that the following certificate thereof was filed with the clerk of the county court of Jersey county on August 27, 1873, to-wit:

"We hereby certify that we require the amount of $6000 to be levied as a special tax for school purposes, on the taxable property of our district, for the year 1873.

Given under our hands this 14th day of August, 1873, by order of the board of trustees H. P. S., T. 7, R. 12.

J. T. CURTISS, *President.*

F. GIERS, *Secretary.*"

And that the county clerk extended the tax on the taxable property of Hamilton primary school district on the collector's book for the year 1873, by virtue of said certificate of tax.

The question presented is as to the validity of this tax.

On the 1st day of February, 1840, the General Assembly of this State passed "An act to incorporate Hamilton Primary

School," (see Private Laws of 1840, p. 53,) the preamble whereof recites:

"Whereas, Silas Hamilton did, by his will and bequest bearing date the 20th day of October, 1834, give and bequeath $4000 in the words following, viz: Believing in the very great importance of primary schools, and desiring that my friends and relatives in this neighborhood should receive the benefit of them, I give and bequeath $4000 for the establishment of a primary school, viz: $2000 to be appropriated to the erection of a building suitable for a school and for a place of public worship, and $2000 to be constituted a fund for the support of a teacher; said house is to be located not exceeding one mile south of this, my residence, nor one mile west, nor one-half mile north, nor one-fourth mile east of it, but at or near the point called the Four Corners, and I desire my executors to oversee the erection of said building.

"And whereas, the executors of said Hamilton have procured a lot of land at the place called the Four Corners, mentioned in said will, it being in the center of section No. 14, in township No. 7 north, range No. 12 west, in Jersey county, and have erected a stone building thereon for the use and purpose mentioned in said will, and for the purpose of enabling the neighborhood aforesaid to use and forever enjoy the benefits of said bequest. Therefore," etc.

The first section enacted that five named individuals and their successors be created a body politic and corporate, by the name and style of the Hamilton Primary School, and by that name could acquire, hold and convey property, "together with all donations and bequests made by Silas Hamilton for school purposes."

It was further provided that the said school should remain located where it was; that the powers conferred by the act should be employed for the purpose of establishing a primary school, and promoting the cause of education; that all gifts and donations which had been or might be made, should be received and held by said Hamilton primary school for the purpose of establishing a seminary of learning, and as best to

promote the objects of the donor, and the trustees were invested with the general power of management of the affairs of the school. The affairs of the school were to be governed by trustees, the five named in the first section to be the first trustees; and on the first Monday of June thereafter, there were to be elected five trustees, and thereafter one every year— one to then go out; that at the election of trustees, persons residing within four miles square, said school house to be the center of the four-miles square, and having the qualification to vote for members of the General Assembly, should be entitled to vote for trustees. The trustees were empowered to make settlement with the executors of Silas Hamilton in respect to said donation, and it was made their duty to see that the donation of said Hamilton was faithfully applied to the objects of the donor.

On the 31st of March, 1869, (Private Laws of 1869, p. 534,) the legislature passed an act amending said act of February 1, 1840, in which it is provided in the second section that the said incorporation shall be three miles square, north and south, east and west, calling the school house the center: "provided, always, that this amendment shall not be so construed as to prevent any relative of Dr. Silas Hamilton from attending said school, who is under twenty-one years of age."

Section 3 is as follows: "The board of trustees are hereby authorized to assess taxes for purpose of paying teachers, repairing the stone school house, or for erecting new buildings for school purposes, not exceeding two per cent per annum."

This is the sole provision upon the subject of this taxation.

The 5th section of the 9th article of the constitution of 1848, in force at the time of the passage of the legislative acts above named, provided that "the corporate authorities of counties, townships, school districts, cities, towns and villages may be vested with power to assess and collect taxes for corporate purposes; such taxes to be uniform in respect to persons and property within the jurisdiction of the body imposing the same."

It has ever been held by this court that this section was to be construed as a limitation upon the power of the legislature to delegate the right of corporate or local taxation to any other than the corporate or local authorities, and that, by the phrase " corporate authorities," must be understood those municipal officers who are either directly elected by the people to be taxed, or appointed in some mode to which they have given their assent. *The People ex rel. McCagg* v. *The Mayor of Chicago,* 51 Ill. 17; *Same ex rel. Wilson* v. *Salomon,* id. 37; *Harward* v. *St. Clair Drainage Co.* id. 130; *Lovingston* v. *Wider,* 53 Ill. 302; *Updike* v. *Wright,* 81 Ill. 49.

These trustees who imposed this tax were not any such corporate authorities of any such corporate bodies as are enumerated in the above cited section of the constitution. Although this Hamilton primary school district may be termed a school district, it is no such school district as is contemplated in the above constitutional provision. The " school districts " there referred to, were the public school districts well known and existing throughout the State, formed for the purpose of the maintenance and support of public schools under the general school law as a part of the system for the establishment and maintenance of common schools throughout the State. To hold that this school district in question comes within the constitutional intendment of " School districts," would be to enable the legislature to confer the taxing power upon any college, seminary or private school of learning within the State, by constituting about it an arbitrary district, provide for the election of trustees therein, and bestow upon them the taxing power for the support of the institution.

Although it was held in *The People* v. *Salomon, supra,* that the clause in the constitution that the legislature may vest the corporate authorities of counties, cities, etc., with the power to assess and collect taxes, did not confine the legislature to any particular corporate authorities, or to any then known instrumentalities of that character, but that several towns, as in that case three towns, might be united in one district for the special purpose of establishing and maintaining a public

park, and the corporate authority of the district so created might be vested with the power of assessing and collecting taxes for the special corporate purpose; yet it was expressly said that the park commissioners there, became a corporate authority, *quasi* municipal, the object of their creation being of a municipal character, and of that alone; that they became a public municipal corporation.

In *Harward* v. *St. Clair Drainage Co. supra*, it was said, with reference to the constitution of 1848, "Under our constitution, the right of taxation can not be granted either to private persons or private corporations." And see *Board of Directors, etc.* v. *Houston.* 71 Ill. 318.

A tax is an imposition for the supply of the public treasury, and not for the supply of individuals, or private corporations, however benevolent they may be. *The Philadelphia Association* v. *Wood*, 39 Penn. St. 73.

The power to tax is vested exclusively in the legislature, and, until they delegate this power to some municipal corporation, the power remains there. Cooley on Taxation, 110.

As to the distinction between municipal or public, and private corporations, Dillon on Mun. Corp., in section 10, lays it down, that corporations intended to assist in the conduct of local civil government are sometimes styled *political*, sometimes *public*, sometimes *civil* and sometimes *municipal*, and certain kinds of them with very restricted powers—*quasi* corporations —all these by way of distinction from *private* corporations. All corporations intended as agencies in the administration of civil government are *public*, as distinguished from *private* corporations; and in section 29, *private corporations* are created for private, as distinguished from governmental, purposes, and they are not, in contemplation of law, public, because it may have been supposed by the legislature that their establishment would promote, either directly or consequentially, the public interest.

In Ang. & Ames on Corp. section 31, it is said that the main distinction between public and private corporations is, that over the former the legislature, as the trustee or guardian

of the public interest, has the exclusive and unrestrained control, and acting as such, as it may create, so it may modify or destroy, as public exigency requires or recommends.   *   *   *
Private corporations are indisputably the creatures of public policy, and, in the popular meaning of the term, may be called public, but yet, if the whole interest does not belong to the government (as, if the corporation is created for the administration of civil or municipal power), the corporation is private; and see *City of Louisville* v. *President and Trustees of University*, 15 B. Monroe, 642; *Curtis* v. *Whipple*, 24 Wis. 350.

Under the decisions of this court, it would seem, as before said, that by the phrase, "corporate authorities," used in the constitution, is to be understood municipal officers.

The trustees, in this case, were in no proper sense municipal officers; nor was the Hamilton primary school a municipal corporation.

The bequest of $4000, by the will of Silas Hamilton, for the establishment of a primary school, $2000 thereof to be appropriated to the erection of a building suitable for a school and for a place of public worship. was not made to, nor did it belong to, the State; and the same of the lot of land procured by his executors, and the building erected by them thereon. It was not public property, but private property.

The incorporation of Hamilton primary school was not for governmental purposes, nor for any purpose belonging to the carrying out of the common school system of the State, but for the purpose of the administration of a private charity.

It is but a private corporation, and under the constitution of 1848, as we conceive, the legislature could not rightfully invest its corporate officers with the power of taxation.   We hold the tax in question to be unauthorized and invalid.

The judgment will be affirmed.

*Judgment affirmed.*